The **WURLITZER COMPANY**, a corporation, Plaintiff,

v.

Frank A. **OLIVER**, an individual,
Defendant.

Civ. A. No. 70–177.

United States District Court,
W. D. Pennsylvania.

Dec. 3, 1971.

Rex Rowland, Pittsburgh, Pa., for plaintiff.

John G. Arch, Pittsburgh, Pa., for defendant.

## OPINION

ROSENBERG, District Judge.

This matter came before me, by non-jury trial, in an action for breach of contract. The record discloses and I find that the plaintiff, The Wurlitzer Company (Wurlitzer) is a Delaware Corporation having its principal place of business in DeKalb, Illinois; that the defendant, Frank A. Oliver (Oliver) is a citizen of the Commonwealth of Pennsylvania and a resident of Allegheny County; that the requisite diversity of citizenship existing and the amount of controversy exceeding the $10,000 jurisdictional amount, jurisdiction is properly vested in this Court pursuant to 28 U.S.C. § 1332(a) (1); that on April 14, 1966 Oliver, individually, executed a continuing written guarantee which provided, inter alia, that he guarantee the full and prompt payment at maturity, or at any time thereafter, of any and all notes or other indebtedness between Frank Oliver, Inc. and the plaintiff; that subsequent to that agreement, and in reliance thereon, the plaintiff delivered certain musical instruments to Frank Oliver, Inc.; that by Order of the Court of Common Pleas of Allegheny County, Pennsylvania, dated August 18, 1969, Frank Oliver, Inc. entered into receivership; that prior to the date of receivership, Frank Oliver, Inc. sold certain of these musical instruments but failed to pay the plaintiff for them; that after the commencement of the receivership, the receiver took possession of the remaining musical instruments; that by Order of the Court of Common Pleas dated October 10, 1969, the Receiver was directed to return the remaining musical instruments to the plaintiff who proceeded to sell them at a public sale on November 1, 1969; that certain unpaid deficiencies remain, and that because Frank Oliver, Inc. is unable to pay this sum, the plaintiff, in reliance on the guarantee, seeks compensation for this deficiency from the defendant individually.

In essence, it is provided in the "Guaranty" agreement (Plaintiff's Exhibit A) that: "In consideration of the extension of credit by Wurlitzer to Dealer [1] in connection with transactions growing out of said relationship, and other good and valuable considerations, receipt whereof is hereby acknowledged, the undersigned [2] * * * do hereby guarantee to Wurlitzer, its successors and assigns, (a) full and prompt payment at maturity, or at any time thereafter, of any and all indebtedness, secured or unsecured, direct or contingent, now or hereafter owing by Dealer to Wurlitzer, the full and prompt payment at maturity, or at any time thereafter, of any note, collateralized note, or other evidence of such indebtedness, and the full and prompt payment or performance at maturity, or at any time thereafter, of any security arrangements or documents for the payment of such indebtedness; and (b) to indemnify and save

---

1. Frank Oliver, Inc.

2. Frank Oliver

Wurlitzer harmless for, from or on account of any liability, loss, damage or expense resulting from or arising out of any fraud, negligence or wrongful acts or omissions by Dealer, including, without limiting the generality of the foregoing:

"1. Payment of any and all indebtedness now or hereafter owing by Dealer to Wurlitzer for merchandise purchased by Dealer, and the payment of any note or other evidence of such indebtedness;

2. Payment and discharge by Dealer of Dealer's obligations, direct or contingent on any retail account, installment account or otherwise, purchased by Wurlitzer from Dealer, or assigned by Dealer to Wurlitzer in payment of, or to secure, indebtedness owing by Dealer to Wurlitzer;

3. Indemnification of Wurlitzer against loss, damages or expense because of fraud or wrongful acts or omissions of Dealer."

While the factual matters are not in dispute, the defendant challenges the legal effect of the "Guaranty" agreement, and the amount which the plaintiff alleges as a deficiency judgment under its terms. Therefore, the questions for determination are: (1) did the plaintiff act reasonably in reselling the musical instruments; (2) what damages did the plaintiff actually sustain; and (3) is the defendant liable to the plaintiff for these damages.

It is provided in 12A P.S. § 2–703 [3] that "Where the buyer wrongfully rejects or revokes acceptance of goods or fails to make a payment due on or before delivery or repudiates with respect to a part or the whole, then with respect to any goods directly affected and, if the breach is of the whole contract * * * then also with respect to the whole undelivered balance, the aggrieved seller may

* * * (d) resell and recover damages as hereafter provided * * *." It is further provided in 12A P.S. § 2–706 that " * * * Where the resale is made in good faith and in a commercially reasonable manner the seller may recover the difference between the resale price and the contract price together with any incidental damages allowed under the provisions of this Article * * * but less expenses saved in consequence of the buyer's breach. * * *" The article also contains provisions for resale at either public or private sales.

■■ Where a breach of contractual duty has occurred, it is the obligation of the non-breaching party to act in such a manner as to mitigate his damages. Rees v. R. A. Bowers Co., 280 Pa. 474, 124 A. 653 (1924). In fulfilling this duty, the plaintiff held a public sale on November 1, 1969.[4] The defendant alleges that this sale was improperly conducted since the plaintiff offered the lot of instruments for sale on one entity, and not on an individual basis. The defendant contends that had the instruments been sold individually, it is probable that a larger sum would have been realized. "The best available market must be sought, and effort made to secure the highest price obtainable * * * at public or private sale * * * but, in the absence of evidence to the contrary, the sum received will be presumed to be the best that could be secured * * *." Atl. C.T. & R. Corp. v. Southwark Foundry & Machine Co., 289 Pa. 569, 577, 137 A. 807, 810 (1927). See also Old Colony Trust Company v. Penrose Industries Corp., 280 F.Supp. 698 (E.D.Pa.1968), affirmed 398 F.2d 310, C.A. 3, 1968. While the defendant's allegations do raise some doubt as to the propriety with which the sale was con-

3. The substantive law of Pennsylvania is applicable to this case. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

4. The following notice appeared in The Pittsburgh Press, Wednesday, October 29,

1969: "PUBLIC Sale—Large lot of pianos, organs and miscellaneous musical instruments and apparatus to be sold by Rex Roland, Attorney, at Tri-State Moving Warehouse, Bedford Square, Pittsburgh, Pa., Saturday, November 1, 1969, at 10:30 a. m." (Plaintiff's Exhibit D)

ducted, sufficient matters have not been presented for my consideration which would adequately support the defendant's claim. Accordingly, it will be assumed that the sale was conducted in "good faith" for the purpose of realizing the greatest sum to be applied in mitigation of damages.

The second burden which the plaintiff must fulfill is to demonstrate by a preponderance of the evidence, the extent of its damages. "Where the resale is made in good faith and in a commercially reasonable manner the seller may recover the difference between the resale price and the contract price together with any incidental damages allowed * * *." 12A P.S. § 2–706.

■ At the trial, the plaintiff introduced Exhibit "B" which is a Stock Report to the Wurlitzer Company showing that as of December 31, 1969, Frank Oliver, Inc. was indebted to the plaintiff in the amount of $61,286.71. This sum represents the total amount due for those instruments which defendant received and apparently disposed of but for which it never paid the plaintiff, and the difference between the original selling price for those instruments repossessed and sold at auction, and the amount received at auction. Since the defendant did not produce any evidence which would rebut these figures, they will be accepted as true.

The final matter remaining for my consideration is a determination of whether or not the defendant is individually liable to the plaintiff for the debts incurred by Frank Oliver, Inc.

■ As previously discussed, the defendant entered into what has been characterized as a "Guaranty" agreement with the plaintiff by which he agreed to make full and prompt payment at maturity or thereafter of all indebtedness between the plaintiff and Frank Oliver, Inc. As a further condition, the defendant waived all requirements of presentment, protest and demand, and notice of default, non-performance, presentment, protest and demand. A contract is one of suretyship, although the word "guarantee" is used, if the agreement is one to pay in case of default by the principal, and not simply to pay in case of the principal's inability to pay, and such an individual is bound to the full extent that his principal is bound. Phil. & R. R. Co. v. Knight, 124 Pa. 58, 16 A. 492 (1889); Riddle v. Thompson, 104 Pa. 330 (1883). These determinations were codified in 1913 as follows:

"Every written agreement hereafter made by one person to answer for the default of another shall subject such person to the liabilities of suretyship, and shall confer upon him the rights incident thereto, unless such agreement shall contain in substance the words: 'This is not intended to be a contract of suretyship,' or unless each portion of such agreement intended to modify the rights and liabilities of suretyship shall contain in substance the words: 'This portion of the agreement is not intended to impose the liability of suretyship.'" 1913, July 24, P.L. 971, § 1, 8 P.S. § 1.

In construing this Act, the Supreme Court of Pennsylvania held:

"* * * the words 'guaranty' and 'suretyship' are in ordinary business transactions frequently used interchangeably and with little understanding of the technical differences between the two. Even before the passage of the act, we held that the use of the word 'guarantee' did not of itself negative an intention that the liability should be that of a surety. * * * Since the act, it is well settled that the words 'guarantee' or 'guarantor' are not sufficient to satisfy the act, and therefore do not prevent the creation of 'the liability of suretyship as distinguished from technical guaranty' * * * the act expressly requires a statement, in the negative form, of an intention not to be liable as surety, if such liability is to be avoided * * * and, in the absence

of an expressed intention not to be so liable, his liability was therefore that of suretyship." Waber's Estate, 317 Pa. 497, 500, 177 A. 51, 52 (1935).

■ A surety is one who undertakes to pay money or perform other acts in the event that his principal fails therein, and the surety is directly and immediately liable for the debt. In re Brock's Assigned Estate, 312 Pa. 7, 166 A. 778 (1933).

Since the agreement before me is a surety agreement, it is not necessary to determine any conditions precedent for imposing liability. All that need be proven is that the defendant is individually liable to the plaintiff for debts incurred by Frank Oliver, Inc., and that Frank Oliver, Inc. incurred liabilities to the plaintiff which have not been fulfilled. , From an examination of the "Guaranty" agreement the pertinent provisions of which were set forth previously, it is clear that the defendant did intend to become bound to pay for the debts of Frank Oliver, Inc., and that the liability which still remains due and owing to the plaintiff is $61,286.71. What remedies the defendant might have, if any, against Frank Oliver, Inc. are not before me for consideration, and are of no consequence in the present action.

■ From the preponderance of the evidence, I conclude that the defendant did intend to be bound as a surety for debts incurred between Frank Oliver, Inc. and the plaintiff; that as surety the defendant is liable to the plaintiff in the sum of $61,286.71 and that therefore judgment shall be entered in favor of the plaintiff and against the defendant in the sum of $61,286.71 with interest from November 1, 1969, the date of the sale, to be calculated at the rate of 6 percent per annum.

This opinion incorporates Findings of Fact and Conclusions of Law required by Rule 52 of the Federal Rules of Civil Procedure.